## MILLER v. MATHIS BROTHERS CO.

1. APPEAL AND ERROR—MOTION TO STRIKE TESTIMONY—OBJECTIONS NOT RAISED ON TRIAL.

In an action by an employee for personal injuries sustained as the result of a fall caused by the breaking of a cross plank used as a support for the flooring of a scaffold, there was no reversible error in denying a motion to strike out the opinion evidence of a foreman of the defendant employer as to the strength of such plank where no objection was made to the admission of such evidence at the time it was introduced and the jury might have regarded his opinion as entitled to little weight.

2. MASTER AND SERVANT—PERSONAL INJURIES—SCAFFOLDS—NEGLI-
   GENCE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.
   In an action by a servant for personal injuries due to
   the falling of a scaffold on which he was at work, under
   the direction of a foreman, with other employees in in-
   stalling a heavy piece of metal work, the negligence of
   the master and lack of contributory negligence of plain-
   tiff were questions for the jury.[1]

Error to Kent; Perkins, J. Submitted October 22, 1917. (Docket No. 75.) Decided December 27, 1917.

Case by Verner Miller against Mathis Brothers Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*H. Monroe Dunham,* for appellant.

*Lombard, Hext & Washburn (Otto G. Ryden,* of counsel), for appellee.

OSTRANDER, J. The plaintiff was employed by the defendant. The defendant had not elected to come under the workmen's compensation act. A scaffold on which plaintiff was working with three other men fell, and he was injured. In his declaration plaintiff alleges that he was a common laborer, working under the direction and instructions of a foreman of defendant in installing certain sheet metal work and breechings to lead from a boiler to a smokestack in a high school building being erected in the city of Grand Rapids, Mich., in the installation of which defendant necessarily constructed and used a scaffold, the platform of which was some 16 feet from the ground. The breaches of alleged duty stated are:

"Yet the said defendant, well knowing its duties as aforesaid, while the said plaintiff was employed

[1] On duty of master as to condition of scaffold constructed by employees, to an employee not a member of the gang for whose use the scaffold was primarily constructed, see note in 22 L. R. A. (N. S.) 952.

by the said defendant as a laborer and then and there assisting the mechanics and the foreman of the said defendant in installing the said sheet metal work and breechings in the manner aforesaid, and particularly when because of the height of the said sheet metal work from the ground, it became and was necessary to construct a scaffold upon which the workmen and the said plaintiff could adjust and place the breeching in its proper position and make the proper connections, negligently and carelessly failed to furnish the said plaintiff with a reasonably safe and suitable place in which to perform the work required of him in the course of his employment with the said defendant, and did negligently and carelessly require the said plaintiff to work upon a scaffolding and in a place that was unsafe and dangerous, for the purpose that it was intended.

"And further disregarding its said duties, the said defendant did negligently and carelessly fail to exercise due care and caution in the construction and erection of the said scaffold upon which the said plaintiff was directed and required to work, and negligently and carelessly failed to make the said scaffolding reasonably safe and of sufficient strength to support the plaintiff and the other workmen required to work thereon under the directions of the foreman of the said defendant, in the prosecution of their work in the installation and construction of the sheet metal work and breeching in the manner aforesaid, and negligently and carelessly failed to construct the said scaffold of good and substantial material of sufficient strength and stability to support the plaintiff and the other workmen engaged in the work in the manner aforesaid, and to withstand the additional pressure that would necessarily be placed upon it other than the weight of the said workmen in lifting the steel plates in adjusting them to their proper position, and the said defendant did, negligently and carelessly, through its said employees, construct the said scaffold of planking which was not good, and which was knotty, rotten, and old and of insufficient strength to withstand the weight of the workmen required to work thereon in the manner aforesaid and the additional pressure and weight that would be caused by the lifting of the heavy breeching to its proper position.

"And the said defendant, further disregarding its said duties in the premises, did, negligently and carelessly, through its said foreman, William C. Larson, who was then and there an employee of the said defendant, and then and there superintending the installation and construction of the said sheet metal work from the boiler to the smokestack in the manner aforesaid, and who was duly authorized by the said defendant to give instructions and directions to the plaintiff and the other workmen assisting in the work aforesaid, and who was familiar with the construction and the material used in the said scaffold, and who knew, as did the said defendant, or in the exercise of due care and caution should have known, that the said platform of the said scaffold was supported only by a plank at each end nailed edgeways to the uprights of the said scaffold, and knew, as did the defendant, or in the exercise of due care and caution should have known, that any additional pressure or weight other than the weight of the workmen and the said foreman standing upon the said platform would cause the said scaffold to break down and entail great injury and imminent danger to the said plaintiff and the other workmen, failed to refrain from causing any additional pressure or weight to be placed upon the said platform of the said scaffold, and negligently and carelessly failed to refrain from directing the workmen working upon the said platform to lift the breeching leading from the boiler to the smokestack, which said breeching was of great weight, to wit, 800 pounds, well knowing, or in the exercise of due care and caution should have known, that the additional weight caused by the lifting of the said breeching, together with the weight of the said workmen standing upon the platform of the said scaffold, would break and tear down the said scaffolding, and the said defendant did, negligently and carelessly, while the said plaintiff was standing upon the said scaffolding, and then and there assisting the said foreman and the other workmen of the said defendant in the manner aforesaid, and while the said plaintiff was in the exercise of due care and caution for his own safety, and without any fault or negligence on his own part, through its said foreman, William C. Lar-

son, command the said workmen and the said plaintiff to lift the said breeching and steel plates, which was of great weight, to wit, 800 pounds, and negligently and carelessly commanded the workmen, and the said foreman assisted in lifting, all at the same time, well knowing, or in the exercise of due care and caution should have known, that the additional weight of the said steel plates and breeching, together with the additional weight caused by the lifting of the said breeching, would produce a greater weight than the said scaffolding could support, well knowing that the said scaffolding was made of old, knotty, and rotten planks and well knowing that the platform upon which they were standing in attempting to lift in the manner aforesaid rested only upon one plank nailed edgeways in the manner aforesaid."

The trial court declined to direct a verdict for the defendant, a verdict for plaintiff was returned, and judgment entered thereon.

Defendant, appellant, says it relies upon two propositions:

(1) There is no evidence of its negligence other than the mere fact of the accident.

(2) The admissions of the witness Larson (the foreman), called by plaintiff for cross-examination under the statute, and his opinions were not binding upon defendant.

Taking up first the last contention, and for the purpose, first, of seeing upon what it is grounded, it appears that it is based upon an assignment of error which is in turn based upon a motion "that all the testimony given by Mr. Larson respecting his opinion as to the cause of the accident on this day in question be stricken out as not competent, relevant, or material," which motion was overruled. No exception was taken to the ruling. There is no index in the record to the testimony. Some portions of that given by Mr. Larson are quoted in the brief for appellant. It is said, in the brief, that the quoted portions clearly

show that this witness "was not competent and not qualified to testify from any experience that he had, or from any scientific knowledge of the strength of timber." Following further quotations from the testimony of this witness, it is said, in the brief, that "these conclusions testified to by the witness are conclusions based solely from the experience that he had in the breaking of this plank, and no other." * * *

It does not appear that any objections to the testimony were interposed by defendant, who therefore may be said to occupy the position of a party willing to speculate upon what the testimony to be given might be, to accept it if favorable, and move to strike it out if unfavorable. But beyond this, the objection now made is based, in part at least, upon the doctrine that the declarations of an agent as to a past transaction are inadmissible to bind the principal. No such declarations were offered or received in evidence. Mr. Larson was a witness, and he answered such questions as were propounded and, as has been stated, without objection. The value of his opinions may have been small, a fact which a jury would regard. Under the circumstances, it is not made to appear that reversible error was committed in denying the motion to strike out his testimony.

The evidence of defendant's negligence. It appears that certain sheet metal work was to be installed between a boiler and a chimney. It was in two sections, one from the boiler, the other from the chimney, and it was necessary to unite them—to join them. The alignment of the two sections was such that it was necessary to lift the end of one of them 2 inches in order to make the connection. A scaffold, the platform of which was some 16 feet above the ground, had been constructed and had been used by the workmen in the course of installing these sections. It was constructed by plaintiff and another under direction

of the defendant's foreman. When it broke, there were four men on it, one of them being the foreman, for the purpose of lifting one section of the metal work, which weighed about 800 pounds—to raise it 2 inches to bring it in alignment with the other section. The men had lifted once, and under the command of the foreman were lifting a second time, when the scaffold went down. The testimony tends to prove that no one knew when the scaffold was constructed that the metal section would have to be raised, and that ordinarily it is not necessary to raise it as was done here.

Some difficulty has been experienced in learning how the scaffold was constructed, especially in learning the distances between bearing points. Described in a general way from the testimony, it was built with four uprights, two at each end, but how many feet it was from the uprights at one end to the uprights at the other is not clear, nor how far from each other the uprights at either end were placed. In short, neither the length nor width of the floor of the scaffold is given. It seems that there was no support to the floor other than that furnished by the planks at each end of the scaffold. In the brief for appellant it is stated:

"The plank that broke was 2 inches thick, 12 inches wide, and 16 feet long, and was standing edgewise, and rested between the boiler and uprights near the pier of the west wall, which supports were from 12 to 14 feet apart."

It is further stated:

"One end of the scaffold was supported by a plank 2 by 12 and 16 feet long, extending from the boiler to uprights near a pier in the west wall. This was at the south end of the scaffold, and from this plank which stood edgewise were laid 12 planks laid 2 deep from this plank at the south end of the scaffold to the cross-plank at the north end of the scaffold."

There are no references to the record, and no further description of the scaffold is given in appellant's statement of facts. In the brief for appellee it is said that appellant has stated the material facts with sufficient accuracy.

The witness Larson estimated the weight of the planks forming the floor at 50 pounds each, or 600 pounds, the weight of the four men at 700 pounds, and the weight of the metal work to be lifted at 800 pounds. The white pine plank supporting the floor at one end broke directly across, without splintering. This is the undisputed testimony, unless it may be said to be disputed by common observation and knowledge, which is not suggested. If he is believed, and the court could not well determine his credibility as matter of law, the witness Larson by his testimony established negligence in the construction of the scaffold for the use to which it was finally put; or negligence in subjecting the scaffold, constructed as it was, to the additional load. Four men worked upon it safely. Portions of the metal work were hoisted upon it. For two days it appeared to be a safe construction. But when four men united in an effort to lift the section of metal work, the end plank supporting the floor of the scaffold broke and the structure collapsed. Of long experience, Mr. Larson testified that if he had, in building the scaffold, provided for this extra burden to be imposed by the lifting by the men he would have built it better. He testifies that he did not think, when he gave the orders to lift the metal work, about how the scaffold had been built, about its safety under those conditions, and that if he had thought he would not have imposed the strain upon that scaffold. In short, he testifies to a construction intended for and sufficient for a certain use, subjected to a different use, a greater burden, not only greater because of the actual load to be sustained, but from

the manner of imposing the load upon the structure. There is testimony tending to prove plaintiff's want of knowledge of the requirements of safe building of such a scaffold. While particularity and preciseness are lacking in the description of the scaffold and in what was lacking to give it the necessary strength, nevertheless the testimony tends to prove much besides an accident and injury. The case, upon plaintiff's theory, is fairly controlled by *Bayer* v. *Grocholski*, 196 Mich. 325 (162 N. W. 1030). It was not error for the court to refuse a directed verdict for the defendant.

The judgment is affirmed.

KUHN, C. J., and STONE, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.